JDN

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph E. Camara, | No. CV 12-2111-PHX-FJM (BSB) |
| Plaintiff, | |
| vs. | **ORDER** |
| J. Fredrickson, DDS, et al. | |
| Defendants. | |

Plaintiff Joseph E. Camara brought this pro se civil rights action under 42 U.S.C. § 1983 against Dr. George L. Loughner, Jr., a dentist with the Arizona Department of Corrections (ADC) (Doc. 1). Before the Court is Dr. Loughner's Motion for Summary Judgment (Doc. 18), Camara's response (Doc. 21), and Loughner's Reply (Doc. 29).[1]

The Court will grant the motion and terminate the action.

**I.    Background**

Camara's claim arose during his confinement at the Arizona State Prison Complex-Eyman, Cook Unit. He alleged that Dr. Loughner retaliated against him for

---

[1] The Court issued an Order, pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), that notified Camara of his obligation to respond to the summary judgment motion and the requirements under Federal Rule of Civil Procedure 56 (Doc. 20).

filing a grievance (Doc. 1 at 7-14[2]).  In his Complaint, Camara set forth the following background facts in support of his claim:

On November 18, 2011, Camara awoke to severe pain from an upper front tooth. He reported to the Cook Unit dental area, where Dr. Fredrickson examined him, took x-rays, and diagnosed an abscess.  Dr. Fredrickson told Camara that under prison policy, his only option was to extract the tooth; however, Camara said he wanted to save the tooth.  Dr. Fredrickson acknowledged that the tooth could be saved with a root canal, but told Camara that policy required that the tooth be pulled.  Dr. Fredrickson also told Camara he could seek a second opinion, which Camara requested.  Dr. Fredrickson refused Camara's request for antibiotics for the infection.

That evening, Camara lost consciousness and fell backwards hitting his head on the floor. He was airlifted to Maricopa Medical Center, where he was treated for a concussion and a cut to his head was stapled.  A toxicology screen revealed that Camara had a blood infection requiring antibiotics.  Camara returned to Cook Unit on November 19, 2011.  Shortly after his return, Camara began vomiting.  He was returned to the hospital and was hospitalized for three and a half days.  Tests showed that Camara's black-out resulted from the abscessed tooth. Antibiotics cleared up Camara's septicemia.

On December 12, 2011, Camara initiated the prison grievance process by filing an informal grievance in which he complained about incompetent and deliberately indifferent care by dentist Dr. Fredrickson in response to the tooth abscess. (Doc. 19, Ex. 2 (Doc. 19-1 at 36)).

On January 3, 2012, Camara was summoned to the dental area, where he was seen by Dr. Loughner for a second opinion.  Camara alleges that when Dr. Loughner realized Camara was the inmate who had filed the administrative grievance, Dr. Loughner treated him in a rude and abusive manner, used expletives and derogatory language, and told

---

[2] Page numbers refer to the pages in the Court's Case Management/Electronic Case Filing system.

1  Camara that there was no way he was going to receive a root canal, and that he would
2  write an "airtight evaluation" to ensure Camara would not get one (*id.* at 12-13).

3        Dr. Loughner diagnosed Camara's #9 tooth as having chronic apical pulpal
4  necrosis or granuloma with internal resorption, and he concurred with Dr. Fredrickson's
5  prior evaluation (DSOF ¶¶ 12-13).  Dr. Loughner states that Camara did not meet the
6  criteria for a root canal as set forth in the ADC Dental Services Technical Manual
7  because his oral health was inadequate, he had poor oral hygiene and a history of
8  periodontal issues, and his overall periodontal status was not good (*id.* ¶ 14).  Dr.
9  Loughner asserts that he would have recommended a root canal despite Camara's poor
10 overall periodontal status and poor oral hygiene if his #9 tooth was periodontally sound.
11 But Dr. Loughner states that Camara's #9 tooth was not sound due to internal resorption,
12 absence of part of the periodontal ligament, and some bone loss (*id.* ¶ 19).  He further
13 states that the tooth was not a periodontally stable abutment tooth for an existing bridge
14 or partial (*id.* ¶ 18).  Dr. Loughner states that he does not recall the exam, though it is
15 possible he used unprofessional language; however, any unprofessional comments did
16 not affect the outcome of his examination or recommended treatment (*id.* ¶¶ 22, 24).

17       On May 24, 2012, Camara was seen by a third dentist, Dr. Krebs, who performed
18 a simple extraction of Camara's #9 tooth.  (*id.* ¶ 26)

19       Dr. Loughner now moves for summary judgment on the grounds that Camara's
20 First Amendment rights were not violated, Dr. Loughner is entitled to qualified immunity
21 and the Eleventh Amendment bars Camara's monetary claim against Dr. Loughner in his
22 official capacity (Doc. 18).

23 **II.  Retaliation Governing Standard**

24       Prisoners have a First Amendment right to file grievances and pursue civil rights
25 actions.  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  Thus, allegations of
26 retaliation against an inmate's First Amendment rights to speech or to petition the
27 government may support a civil rights claim.  *See Valandingham v. Bojorquez*, 866 F.2d
28 1135, 1138 (9th Cir. 1989); *Rizzo v. Dawson*, 778 F.2d 527, 531-32 (9th Cir. 1985).

A viable claim of First Amendment retaliation requires a showing of five elements: (1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, (4) such action chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68. A prisoner "must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994). The resulting injury need not be tangible to support the claim. *Hines v. Gomez*, 108 F.3d 265, 267, 269 (9th Cir. 1997) (a chilling effect on the prisoner's First Amendment right to file prison grievances is sufficient to support a retaliation claim).

Retaliation claims must be evaluated in light of the concerns of excessive judicial involvement in day-to-day prison management, and courts must therefore "afford appropriate deference and flexibility" to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

### III.  Analysis

There is no dispute that Camara initiated a grievance regarding his dental care on December 12, 2011, and that this constitutes a protected action under the First Amendment. Camara alleges that he suffered an adverse action when Dr. Loughner refused to recommend a root canal and falsified dental records to ensure that he would not receive one. Denial of appropriate medical or dental care may constitute an adverse action. *See Chatman v. Medina*, No. 2:11-CV-0681, 2014 WL 1155565, at *5, 15 (E.D. Cal. March 21, 2014). An adverse action may also be found where a defendant officer files a false report in retaliation for a prison grievance. *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

Although Camara's allegations were sufficient to support his retaliation claim on screening, at summary judgment he must go beyond the pleadings and designate specific

facts to show a material factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Here, Camara expresses his disagreement with Dr. Loughner's findings at the January 3, 2012 appointment; however, allegations of a difference of opinion regarding medical treatment do not state an adverse action. Camara fails to submit any medical evidence to show that Dr. Loughner's conclusions as to his eligibility for a root canal were wrong. There is no evidence to dispute Dr. Loughner's finding that Camara's overall periodontal status was not good, and the record shows that to qualify for a root canal, one of the required criteria is "[t]he overall periodontal status must be good, with pocket depth limited to 2-3 mm." (Doc. 19, Ex. 1, Attach. B). Nor is there any evidence to dispute Dr. Loughner's determination that Camara's #9 tooth was not a periodontally stable abutment tooth for an existing bridge or partial denture and, thus, he did not qualify for an exception to the root canal policy (Doc. 19, Ex. 1, Loughner Decl. ¶ 21 & Attach. B (Doc. 19-1 at 6, 34)). Indeed, Dr. Loughner's conclusions are consistent with Dr. Fredrickson's findings, and these two dentists' findings are the only medical/dental opinions in the record. In short, Camara cannot show that Dr. Loughner's conduct amounted to an adverse action. Dr. Loughner is entitled to summary judgment on this basis.

However, even if we assumed that Camara could show that Dr. Loughner's conduct constituted an adverse action, his retaliation claim would nevertheless fail because Camara fails to show the absence of a legitimate correctional goal for the challenged conduct. *Pratt*, 65 F.3d at 806. As mentioned, the Court must "afford appropriate deference and flexibility to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* at 807 (quotation omitted).

Dr. Loughner argues that his conduct advanced a legitimate correctional goal because it provides for treatment and recommendations by trained medical professionals, as opposed to letting inmates dictate their treatment (Doc. 18 at 9). The evidence of a

policy, which Dr. Loughner relied upon and which outlines eligibility for root canals, further supports a legitimate correctional goal to provide uniform care and avoid discriminatory or inequitable treatment to different inmates (*see* Doc. 19, Ex. 1, Loughner Decl. ¶¶ 16-21 (Doc. 19-1 at 5-6)).

In response, Camara does not address Dr. Loughner's argument on this element. He merely asserts that "Defendant has no claim that his actions advanced a legitimate correctional goal where he acted in an individual capacity while operating under color of state law" (Doc. 21 at 10). Camara also suggests that Dr. Loughner's admission that he may have used unprofessional language during their interaction amounts to a concession that he violated Camara's First Amendment rights (*id.* at 10-11). But unprofessional language does not rise to a constitutional violation. In failing to address Dr. Loughner's argument, Camara cannot establish the absence of a legitimate penological purpose for Dr. Loughner's actions when he determined that Camara did not qualify for a root canal.

For the above reasons, the Court finds there exists no genuine issue of material fact that Dr. Loughner's conduct constituted an adverse action or that his conduct did not advance a legitimate correctional goal. Accordingly, Dr. Loughner's Motion for Summary Judgment is granted.

**IT IS ORDERED**:

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant Loughner's Motion for Summary Judgment (Doc. 18).

(2) Defendant Loughner's Motion for Summary Judgment (Doc. 18) is **granted**.

(3) The Clerk of Court must enter judgment accordingly and terminate the action.

Dated this 23rd day of June, 2014.

*Frederick J. Martone*
Frederick J. Martone
Senior United States District Judge